# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:15-cr-00353-GMN-NJK |
| vs. | ) | |
| | ) | **ORDER** |
| CHRISTOPHER RYAN BUSBY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Pending before the Court is Defendant Christopher Ryan Busby's ("Defendant's") Emergency Motion for Compassionate Release, (ECF No. 164).  The Government filed a Response, (ECF No. 167), and Defendant filed a Reply, (ECF No. 169).  For the reasons discussed below, the Court **DENIES** Defendant's Motion.

## I.   BACKGROUND

On February 28, 2019, Defendant pleaded guilty to Count One of the Indictment: receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b). (*See* Mins. Proceedings, ECF No. 113).  Defendant was initially on pretrial release, but the Court revoked his release and ordered him detained after he was arrested for Open and Gross Lewdness Victim Under the Age of 18. (*See* Order Granting Petition for Warrant, ECF No. 116); (Mins. Proceedings, ECF No. 121); (Order of Detention, ECF No. 122).  On August 9, 2019, the Court sentenced Defendant to 121 months custody followed by 45 years supervised release after finding him guilty of Count One of the Indictment. (*See* J., ECF No. 137) (Mins. Proceedings, ECF No. 135).  Defendant is presently in custody at the Milan Federal Correctional Institution ("FCI Milan"). (*See* Mot. Compassionate Release 2:1–2, ECF No. 164).

Defendant petitions this Court for compassionate release, arguing that the COVID-19 pandemic's spread through FCI Milan, in combination with Defendant's underlying health conditions comprising, "multiple chronic medical conditions which impair his nervous system, and mental health conditions that compromise his immune system" present "extraordinary and compelling reasons" for his release from custody. (*Id.* 1:20–2:2). Defendant seeks a reduction of his sentence to time served with an extension of his supervised release term of up to 69 months, which may include a period of home confinement. (*Id.* 2:3–11)

## II.   <u>LEGAL STANDARD</u>

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), authorizes the sentencing court to modify a defendant's sentence in limited circumstances. 18 U.S.C. § 3582(c)(1)(A). Generally, to be eligible for compassionate release, a defendant must demonstrate: (1) he has exhausted his administrative remedies; (2) "extraordinary and compelling reasons" warrant a reduction in his sentence, and (3) he is not "a danger to the safety of any other person or the community." 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. Under United States Sentencing Guideline § 1B1.13, "extraordinary and compelling reasons" include, among other things, terminal illnesses and medical conditions "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13. The court may also consider "other reasons" including a "reason other than, or in combination with" a reason specifically provided in the Sentencing Guidelines. *Id.* The decision to grant compassionate release is in the sentencing court's discretion. *See United States v. Wade*, 2:99-CR-00257-CAS-3, 2020 U.S. Dist. LEXIS 65373, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020).

//

//

### III.    DISCUSSION

Defendant argues that he should be granted compassionate release because he has both physical and mental health conditions that increase the risk he will suffer severe complications from COVID-19 if infected. (Mot. Compassionate Release 9:6–12:2).  The Court finds that Defendant has not shown extraordinary and compelling reasons for his release because available medical evidence does not establish a strong connection between Defendant's health conditions and COVID-19.  The Court begins its analysis with Defendant's physical diagnoses.

Defendant argues that his epilepsy, a benign tumor in his spine, and scoliosis—all central nervous system ("CNS") conditions—put him at heightened risk of severe COVID-19 complications. (*Id.* 9:6–10:2).  Defendant does not present any evidence that his conditions increase his susceptibility to severe COVID-19 related illness.  Rather, Defendant cites medical evidence showing that persons infected with COVID-19 often present neurological symptoms. (*Id.* 10:3–9).  As a result, he concludes without citation that "[i]t is more than reasonable to deduce that an individual like Mr. Busby, whose central nervous system is already impaired in multiple ways, is at greater risk of serious illness or even death if he contracts COVID-19." (*Id.* 10:7–10).

First, Defendant's speculative deduction is flawed because the presence of neurological symptoms does not necessarily indicate that the virus attacks the CNS.  Dr. Serena Spudich, division chief of neurological infections and global neurology at Yale University School of Medicine, explained in an interview that it is unclear why COVID-19 patients sometimes present neurological symptoms. Janel Miller, "Q&A: Navigating neurological consequences of COVID-19," https://www.healio.com/news/primary-care/20200612/qa-navigating-neurological-consequences-of-covid19 (June 12, 2020).  The virus directly impacting the brain is just one possible explanation. *Id.*  Alternatively, it may be true that "the body's response to the virus is making the brain sick, much like how the brains of some patients with HIV are

damaged due to the immune system's response to the virus." *Id.*  A third explanation is that the effects may be the result of "other illnesses people have when they are sick with COVID-19." *Id.*  For example, she explains that the virus often causes respiratory complications, leading to lower levels of oxygenation in the blood, which can manifest in the patient having an altered mental state. *Id.*  Thus, because neurological manifestations of the virus may be completely unrelated to the virus's interaction with the CNS, the Court cannot conclude that the virus would exacerbate Defendant's underlying CNS conditions.

Additionally, Defendant's conclusion is unsupported by the most recent medical evidence.  The Centers for Disease Control and Prevention ("CDC") maintain a list of underlying medical conditions that evidence has shown increase an individual's risk of contracting severe illness from COVID-19. *See* CDC, "Coronavirus Disease 2019: People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (June 25, 2020) ("CDC Report").  Defendant's conditions are not listed. *Id.*  Although the list notes there is some evidence that individuals with neurological conditions might be at increased risk, the CDC highlights degenerative neurological diseases like dementia and ALS, not anything similar to Defendant's conditions. *Id.*  Accordingly, Defendant has not shown that his underlying physical conditions put him at heightened risk to developing serious complications from COVID-19.

The Court next considers whether potential COVID-19 infection in combination with Defendant's mental health conditions—ADHD, bipolar disorder, anxiety, and panic attacks— provide extraordinary and compelling reasons for Defendant's release.  The Court concludes that they do not.

Defendant argues that his psychiatric disabilities can increase the risk of COVID-19 complications. (Mot. Compassionate Release 10:17–11:9)  For example, he argues that his mental illnesses may diminish the body's ability to produce antibodies to fight infection. (*Id.*).

The CDC does not list mental health conditions among diagnoses that put individuals at heightened risk for severe COVID-19 related illness. *See* CDC Report.  Although Defendant argues that "[d]istrict courts nationwide have begun to recognize the link between mental illness and risk from COVID-19," he only provides two examples, which this Court does not find persuasive. (*See* Mot. Compassionate Release 11:10–12:2)  Given how speculative the relationship is between mental illness and the body's ability to fight COVID-19, the Court does not find that the relationship is an extraordinary and compelling reason for Defendant's release. Accordingly, the Court need not address whether Defendant's release would endanger the safety of the community.

## IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release, (ECF No. 164), is **DENIED**.

**DATED** this ___8___ day of July, 2020.

_____
Gloria M. Navarro, District Judge
United States District Judge