# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> Respondent/Plaintiff, ) <br> vs. ) <br> ) <br> CHRISTOPHER RYAN BUSBY, ) <br> ) <br> Petitioner/Defendant. ) <br> ) <br> ) | Case No.: 2:15-cr-00353-GMN-NJK-1 <br><br> **ORDER** |

Pending before the Court is the Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("§ 2255 Mot."), (ECF No. 184), filed by Petitioner Ryan Busby ("Petitioner"). The Government filed a Response, (ECF No. 197), to which Petitioner filed a Motion of Response, (ECF No. 201).

For the reasons discussed below, the Court **DENIES in part and DEFERS in part on** Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255,[1] and **DENIES as moot** Petitioner's Motion of Response.[2]

---

[1] At the outset, the Court notes Petitioner's § 2255 Motion is 279 pages, and his Motion of Response is sixty-nine (69) pages. Local Rule 7-3 limits the pages in all motions and responses to motions, except those for summary judgment, to "24 pages, excluding exhibits." Here, Petitioner did not file a motion for leave to file a brief in excess of the page limitation. A *pro se* litigant is under the same obligation as represented litigants to follow the rules of procedure, which include the Local Rules as well as the Federal Rules of Civil Procedure. *See Carter v. C.I.R.*, 784 F.2d 1006, 1008–09 (9th Cir. 1986) (holding that, although a party is *pro se*, he is "expected to abide by the rules of the court in which he litigates") (citation omitted). While Petitioner's violation of Local Rule 7-3 is a sufficient justification to strike the portions of Petitioner's § 2255 Motion and Motion of Response in excess of the page limitation, the Court will nevertheless address the arguments contained therein.

[2] Although Petitioner styled his filing as a Motion of Response, the document does not request any form of relief that was not already addressed in Petitioner's § 2255 Motion. (*Compare* Mot. Resp., ECF No. 201 *with* § 2255 Mot., ECF No. 184). Instead, the Motion of Response attempts to rebut the arguments set forth by the Government in its Response, (ECF No. 197). Therefore, the Court construes Petitioner's Motion of Response as a Reply to the Government's Response. To the extent Petitioner's Motion of Response seeks relief requested in his § 2255 Motion, it is DENIED as moot.

# I. BACKGROUND

The Court incorporates the background information and procedural history of this case from the Government's Response. (*See* Resp. 4:13–13:3, ECF No. 197). On February 28, 2019, Petitioner pleaded guilty to Count One of the Indictment: receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b). (*See* Mins. Proceedings, ECF No. 113). On August 12, 2019, the Court sentenced Petitioner to custody for 121 months followed by forty-five (45) years' supervised release after finding him guilty of Count One. (*See* Judgment, ECF No. 137) (Mins. Proceedings, ECF No. 135). On November 16, 2021, Petitioner filed the instant § 2255 Motion, which the Court discusses below.

# II. LEGAL STANDARD

Section 2255 provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 18 U.S.C. § 2255; *see also Davis v. United States*, 417 U.S. 333, 344–45 (1974). To warrant relief, the prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("Brecht's harmless error standard applies to habeas cases under section 2255[.]"). Relief is warranted only upon the showing of "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346.

Under Section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting 28 U.S.C. § 2255). The court may

deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996).  To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. *Id.*  Mere conclusory statements in a section 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

### III. DISCUSSION

Petitioner argues vacatur of his sentence is warranted on the following grounds: (1) he was not competent to plead guilty because he was under the influence of methamphetamine and Seroquel at his change-of-plea hearing; (2) the appeal waiver in his Plea Agreement is invalid because his plea was involuntary and the Court did not mention that he was waiving his to right to appeal or to collaterally attack his sentence; (3) the Government breached the express terms of his Plea Agreement; (4) he is factually innocent of his convicted offense;[3] (5) the Court committed a sentencing error; (6) the charging Indictment was defective; and (7) ineffective assistance of counsel. (*See generally* § 2255 Mot.).  The Court examines each of Petitioner's grounds for relief in turn.

### A. Competency to Plead Guilty

Petitioner first contends that he was under the influence of methamphetamine and Seroquel at his change-of-plea hearing, rendering his plea unknowing and involuntary. (§ 2255 Mot. at 6, 56).  Petitioner argues that this Court erred by failing to engage in a careful examination of his competency at the hearing. (*Id.* at 57).  Specifically, Petitioner asserts that

---

[3] Petitioner bifurcates his factual innocence defense into two separate, but related arguments. (*See* § 2255 Mot. at 34–43, 119–43) (dividing his factual innocence argument between ground one and ground eight for relief).  Because resolution of Petitioner's factual innocence requires consideration of the same arguments and legal issues, the Court addresses Petitioner's factual innocence defense together.

the Court failed to ascertain the amount of Seroquel he had consumed or inquire as to whether he had taken illegal narcotics, namely methamphetamine. (*Id.* at 57).

Under Fed. R. Crim. P. 11(b), a district court has the duty to ensure that a criminal defendant understands the rights that he is giving up, the nature of the charge, the applicable penalty range, and the contours of the plea agreement. In *United States v. Carter*, the Ninth Circuit noted that while the "depth" of the requisite inquiry a district court must take into a defendant's medication use is "unclear," case law across circuits provided the following guidance:

> District courts should ask about the types of drugs and whether the medications are affecting the defendant's mental state. They need not (but are nonetheless encouraged to) inquire about the exact names or dosages of the medications. And, when determining whether defendants are competent, district courts are entitled to rely on their own observations of defendants, the defendants' answers throughout the proceeding (not just when discussing competency), and the defendants' medical histories (or lack thereof). In general, appellate courts have vacated pleas only when the district court failed completely to engage in any meaningful follow-up with a defendant.

795 F.3d 947, 952 (9th Cir. 2015). In *Carter*, the court found that the disputed inquiry was sufficient to ensure the defendant's plea was knowing and voluntary, where the district court asked the defendant "mental-state-related questions" after he revealed he was under the influence of medication. *Id.* at 955. These questions included: (1) the type of medication the defendant was taking; (2) whether the medication being taken made it difficult for the defendant to understand what the court or his lawyer was saying; and (3) whether the defendant understood the purpose of the hearing. *Id.*

At Petitioner's change-of-plea hearing, the undersigned engaged in the following colloquy exchange with Petitioner:

> The Court:  And are you being treated for any medication – or for any illness that requires medication?
>
> The [Petitioner]:  Yes.

The Court: Okay, what medication are you taking?

The [Petitioner]: Baclofen, Keppra, those are the ones that go towards the illness.

The Court: All right, and do any – how long have you been taking those medications? Are they new or something you have taken for awhile?

The [Petitioner]: One of them – one of them has been two years, the other has been about seven years.

The Court: All right, so you are familiar by now with any side effects that those medications might have?

The [Petitioner]: Yes.

The Court: All right. And do they have any side effects that would affect our hearing today? For example, do they make you anxious or tired or sleepy, difficult to concentrate or pay attention for periods of time? Does it make difficult for you to read or in any way affect your ability to understand what is happening today?

Ms. Ojeda: Your Honor, Mr. Busby indicates that he actually is taking additional medications that he wants to tell the Court about.

The Court: All right. Well, let's talk about these first and make sure. Are there any side effects for these particular medications we just talked about that would interfere with today's hearing?

The [Petitioner]: No.

The Court: All right. So what other medications are you also taking?

The [Petitioner]: Adderall, Seroquel, Baclofen, and those are – that would be it.

The Court: And how long have you been taking those medications? Are they knew or are they something you've been taking for awhile?

>The [Petitioner]: Two of them are now, for, I mean, two years. I'm not too concerned about that. Adderall I have been taking for over 25 years, different version of it, but that drug does have profound side effects so.
>
>The Court: The Adderall?
>
>The [Petitioner]: Yes.
>
>The Court: Okay. Sir, did you take your Adderall today?
>
>The [Petitioner]: No.
>
>The Court: Why not?
>
>The [Petitioner]: 'Cause I was coming here.
>
>The Court: All right. Well, is the Adderall for attention deficit disorder?
>
>The [Petitioner]: Yeah.
>
>The Court: All right. So are you finding it difficult to pay attention today?
>
>The [Petitioner]: No.
>
>The Court: Were you afraid that if you took the medication that you wouldn't be able to pay attention?
>
>The [Petitioner]: Yeah, it would get me anxious, anxiety.
>
>The Court: So the Adderall makes you anxious?
>
>The [Petitioner]: (indisc.) yeah, unless it's a normal day-to-day operation I'm used to then it doesn't.
>
>. . .
>
>The Court: All right. And is there any alcohol that you have taken in the last 24 hours?
>
>The [Petitioner]: No.

>   The Court: All right. So does the Government or the Defense have any concerns as to the ability of Mr. Busby to competently enter a plea this morning considering he didn't take his Adderall?
>
>   Ms. Ojeda: I don't, your Honor.
>
>   Ms. Roohani: I don't either, your Honor, and I'll represent to you that I have spoken with Mr. Busby on numerous occasions and his affect and his understanding is the same today as it was in the past, and I believe that he was on medication at that time, so I don't have any concerns.
>
>   The Court: All right. Okay, so we'll go forward, and Mr. Busby, you let me know if at any time you're finding it difficult to focus on what I'm saying and you're being distracted and your mind is wandering to other things. You know, just tell your attorney or raise your hand and we'll back up, rewind and do over whatever it is that you missed. It's important that you understand everything that happens here today, okay?
>
>   The [Petitioner]: Yes.

(Change Plea Transcript 5:7–8:21, ECF No. 153).

This transcript demonstrates that the Court followed the requirements set forth in *Carter*. The Court asked Petitioner a series of mental-state-related questions after he revealed he was under the influence of medication. This included whether Petitioner suffered any side effects from his medication, and relatedly, whether Petitioner's medications would affect his ability to understand the proceeding. (*Id.* 5:20–7:19). The Court also advised Petitioner to instruct his attorney to pause the proceeding if at any time he found it difficult to understand what was happening. (Change Plea Transcript 8:13–20). In *United States v. Hughes*, the Ninth Circuit found the district court sufficiently ensured the voluntariness of the defendant's guilty plea when it advised the defendant to ask questions or stop the proceeding to request clarification at any time. No. 21-cv-50304, 2023 WL 3073105, at *1 (9th Cir. Apr. 25, 2023) (determining that an inquiry was sufficient when the court notified the defendant that he could stop the

hearing at any time if he did not understand something or needed to consult his counsel). In sum, the Court's colloquy satisfied the requirements of *Carter* and adhered to Ninth Circuit precedent.

Next, contrary to Petitioner's contention, the Court was not required to determine the exact quantity of Seroquel he was prescribed or had consumed.[4] *See Carter*, 795 F.3d at 955 ("And while it may be helpful to look at the dosage and specific names of medications, this is not required."). It was only obligated to learn what type of drug Petitioner had consumed, which Petitioner disclosed. (Change of Plea Transcript 6:11–15); *see Carter*, 795 F.3d at 954 (stating the district court "has a duty to determine, at a minimum, what type of drug the defendant has taken and whether the drug is affecting the defendant's mental state"). Notably, Petitioner explicitly represented to the Court that he was "not concerned" that his Seroquel prescription would affect his ability to understand the proceeding. (*See* Change Plea Transcript 6:13–22) (disclosing to the Court he also was prescribed Adderall, Seroquel, and Baclofen, but stating he was not "too concerned" about the Seroquel and Baclofen). *Carter* makes clear that "[w]hen determining whether there is any effect on defendants, district courts may rely on defendants' answers to their inquiries[.]" *Id.* at 954. Therefore, the Court did not err in relying on Petitioner's representation that his Seroquel prescription would not affect his ability to understand the proceeding.

---

[4] To this end, the Court also disagrees with Petitioner's contention that the Court was required to explicitly ask him if he was under the influence of methamphetamine. (§ 2255 Mot. at 57). The Court inquired if Petitioner was being treated with medication or had consumed alcohol within twenty-four hours of the proceeding. (Change Plea Transcript 5:8–20, 7:25–8:2). And Petitioner, of his volition, disclosed to the Court additional medication he was taking. (*Id.* 6:3–17). It is curious, and more than a little suspect, that Petitioner willingly disclosed additional medication he was taking but forgot to admit he used methamphetamine prior to the hearing. The Court engaged in an extensive colloquy with Petition to determine his competency. Under *Carter* and applicable caselaw, the Court was not required to conduct a more substantial inquiry.

Finally, while Petitioner's answers generally consisted of "Yes" or "No" answers, "his answers were responsive to the questions asked and were consistent with affirming he had no questions for the [C]ourt." *Id.* at 955. And the "fact that [Petitioner's] attorney apparently considered him competent is significant evidence that he was competent." *United States v. Clark*, 617 F.2d 180, 186 n.11 (9th Cir. 1980); *see also Stanley v. Cullen*, 633 F.3d 852, 861 (9th Cir. 2011) ("Trial counsel's assurances to the court are relevant because 'a defendant's counsel is in the best position to evaluate a client comprehension of the proceedings.'") (quoting *Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir. 1991)). Accordingly, the Court's extensive discussion with Petitioner, including its observation and interaction with Petitioner, demonstrated that Petitioner was competent to enter a knowing and voluntary plea.

### B.  Validity of Appeal Waiver

Petitioner next claims that the appeal waiver in his Plea Agreement is invalid because his plea was involuntary,[5] and because the Court did not mention that he was waiving his to right to appeal and collaterally attack his sentence.[6] (§ 2255 Mot. at 112).

"A defendant may waive the statutory right to collaterally attack his sentence or conviction." *United States v. Sotelo*, No. 2:14-cr-0113, 2022 WL 846525, at *3 (E.D. Cal. Mar. 22, 2022) (citing *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). The Ninth Circuit has found that a defendant's waiver of his right to appeal and to bring a collateral attack is enforceable if "(1) the language of the waiver encompasses [the defendant's] right to appeal

---

[5] For the reasons set forth above, the Court finds Petitioner knowingly and voluntarily entered the Plea Agreement. Therefore, the Court only examines Petitioner's remaining arguments.

[6] Petitioner also contends that his waiver did not apply to the fine imposed under the Justice for Victims Trafficking Act. (§ 2255 Mot. at 116). Petitioner's argument is unclear, as the Government never claimed he was unable to appeal that portion of his sentence. (*See* Resp. 20:21–24). Indeed, Petitioner did appeal, and it resulted in the fine being vacated. (Gov.'s Resp. Def.'s Mot. Reject 1:16–19, ECF No. 192); (Order USCA, ECF No. 172). Accordingly, while the Court agrees the waiver provision did not apply to that portion of Petitioner's sentence, it disagrees that Petitioner's successful appeal of the fine otherwise invalidated the appeals waiver provision.

on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Goodall*, 21 F.4th 555, 561 (9th Cir. 2021).

Here, the Court finds that Petitioner's waiver of his right to collaterally attack his plea and sentence was knowing and voluntary. The Court begins with the Plea Agreement's waiver language. Petitioner's Plea Agreement specified that he "knowingly and expressly waives all collateral changes, including any claims under 28 U.S.C. § 2255, to [his] conviction, sentence, and the procedure by which the district court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel." (Plea Agreement 18:20–23, ECF No. 114). This language specifically encompasses collateral attacks under § 2255, except as to non-waivable claims. *See Davies v. Benov*, 856 F.3d 1243, 1246–47 (9th Cir. 2017).

Moreover, the Court's inquiry at Petitioner's change-of-plea hearing established that he knowingly and voluntarily waived his right to collaterally attack his conviction and sentence under § 2255. At a change-of-plea hearing, "[a] district court is required to inform the defendant of 'the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.'" *United States v. Lo*, 839 F.3d 777, 784 (9th Cir. 2016); *see also* Fed. R. Crim. P. 11(b)(1)(N) (requiring the court to personally address the defendant in open court to determine if the defendant understands the terms of any plea agreement provision waiving the right to appeal or to collaterally attack the sentence). If the district court does so, the Ninth Circuit has held that such procedure is sufficient to find a knowing and voluntary waiver. *Lo*, 839 F.3d at 785.

In addition to signing the Plea Agreement, Petitioner verbally informed the Court at his change-of-plea hearing that he understood and accepted the terms of his Plea Agreement, including the waiver of his right to appeal or collaterally attack his sentence. (Change of Plea Transcript, 13:2–20). "In signing the [P]lea [A]greement and verbally agreeing he understood its terms, including the waiver of his right to collaterally attack his sentence," Petitioner

knowingly and voluntarily waived his right. *Sotelo*, 2022 WL 846525, at *7; *see United States v. Walker*, 160 F.3d 1078, 1096 (6th Cir.1998) (holding, in a § 2255 case, that a short 'Yes, your Honor' was sufficient to bind him to his plea agreement.)

### C.  Government's Breach of Plea Agreement

Petitioner next argues the Government breached the Plea Agreement by not moving for a downward departure from the applicable guideline range and by not moving for a below guideline sentence.[7] (§ 2255 Mot. at 91).  Petitioner also maintains the Government breached an undocumented side agreement made by prosecutors. (*Id.* at 102).

When analyzing a claim that the government breached its plea agreement, courts must "construe [the] plea agreement as a contract between the prosecutor and the defendant." *United States v. Manzo*, 675 F.3d 1204, 1210 (9th Cir. 2012) (quotation marks omitted).  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).  "When the government agrees to make a certain recommendation to the sentencing court, it is bound by the agreement to mark that particular recommendation." *United States v. Johnson*, 187 F.3d 1129, 1135 (9th Cir. 1999).  A "breach of the parties' plea agreement is 'undoubtedly a violation of the defendant's rights.'" *United States v. Whitney*, 674 F.3d 970 (9th Cir. 2012) (quoting *Puckett v. United States*, 556 U.S. 129, 136 (2009)).

The Court begins again with the express language of the Plea Agreement.  Two provisions underly this issue.  First, the Plea Agreement provided that "in the event the United States files a downward departure motion based upon the defendant's substantial assistance, the

---

[7] The Court separately notes the Government argues Petitioner waived any argument surrounding breach of his Plea Agreement "by failing to raise it on direct appeal[.]" (Resp. 20:20–21:1).  The Court considers the Government's argument, but "[i]n an abundance of caution and in order to minimize the risk of unnecessary future litigation, the Court finds it prudent to evaluate Petitioner's claim on the merits." *Pete v. United States*, No. 14-cr-338, 2019 WL 4509206, at *3 (C.D. Cal. Aug. 1, 2019).

United States reserves the right to make a specific recommendation to the Court regarding the extent of such a departure." (Plea Agreement 12:4–8). Second, the Plea Agreement stated that the "United States will recommend that the Court sentence [Petitioner] to a sentence within the applicable sentencing guideline range as Determined by the Court[.]" (*Id.* 13:2–5).

Here, the Court finds that the Government complied with the foregoing provisions. As to the first provision, the Government moved for a one-level departure. (Sentencing Transcript 17:23–18:17). While this one-level departure may have been less than Petitioner envisioned, the Plea Agreement expressly provided that the "[Government] reserve[d] the right to make a specific recommendation to the Court regarding the extent of such a departure." (Plea Agreement 12:4–8); *see Pete*, 2019 WL 4509206, at *3 (examining the same provision, and determining that the petitioner was not entitled to a specific downward departure under the plea agreement). As to the second, the Government recommended a sentence, albeit on the high end, within the applicable sentencing range. (*Id.* 18:13–17). Again, while this sentence may not have been what Petitioner envisioned, it was consistent with the express terms of the Plea Agreement. Contrary to Petitioner's contention, nowhere in the written Plea Agreement did it contain a provision requiring the Government to recommend a three-point reduction for substantial assistance.

Petitioner also maintains that the Government broke an undocumented side agreement. (§ 2255 Mot. at 102); (Reply at 17, ECF No. 201). However, the Plea Agreement stated that the written agreement,

> constitutes the entire agreement negotiated and agreed to by the parties. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the defendant, the defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

(*Id.* 20:1–17).

In the Ninth Circuit, "similar integration clauses bar a defendant from later claiming breach of an undocumented promise." *Menaged v. United States*, No. 117-cr-00680, 2019 WL 47744804, at *3 (D. Ariz. Sept. 30, 2019) (collecting cases). Because the alleged promise is not in the written Plea Agreement, and Petitioner agreed that any promises outside the written agreement shall not "have any force or effect," there was no breach of the Plea Agreement based on the undocumented promise. Accordingly, the Court rejects this argument.

**D.  Factual Innocence**

Petitioner additionally argues that he is factually innocent of the charged offense, and that his conviction is based on false evidence produced by the Government. (§ 2255 at 19, 27–28). In response, the Government contends that the Petitioner's factual innocence claim fails because he admitted the facts underlying his conviction in both his Plea Agreement and in his change-of-plea hearing. (Resp. 18:21–22).

A guilty plea "comprehends all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). Thus, by pleading guilty, a defendant admits the facts constituting the elements of the charge. *See United States v. Cazares*, 121 F.3d 1241, 1246 (9th Cir. 1997) ("It has long been settled that a guilty plea is an admission of all the elements of a formal criminal charge.") (citations and quotations omitted). "Any attempt to contradict the factual basis of a valid plea must fail." *United States v. Morrison*, 113 F.3d 1020, 1021 (9th Cir. 1997); *see also United States v. Mathews*, 833 F.2d 161, 165 (9th Cir. 1987) ("Matthews seeks to avoid his sentence on the ground that an allegation in the indictment . . . is contradicted by the evidence. By pleading guilty to the indictment, however, Matthews conclusively admitted the allegation.").

At its core, Petitioner's argument is predicated on a repudiation of the facts he admitted in his Plea Agreement and in open court. "[S]tatements at the plea colloquy carry a strong presumption of truth." *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012), *as amended* (May

31, 2012) (citing *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("[T]he representations of the defendant [at a plea hearing] . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."). Here, Petitioner entered a knowing and voluntary plea of guilty, "both in the Plea Agreement and in open court during the change of plea, in which he admitted that the Government could prove beyond a reasonable doubt" the elements of the offense charged. *United States v. Harpham*, No. 2:11-cr-00042, 2015 WL 4623717, at *4 (E.D. Wash. Aug. 3, 2015); (*see* Change of Plea Transcript 20:17–23:13). Accordingly, Petitioner's own admissions belie his contention he is factually innocent.

### E.  Sentencing Error

Petitioner next posits that the Court erred at sentencing by applying the sentencing enhancements contained in the United States Sentencing Guidelines ("U.S.S.G.") § 2G2.2(b)(2), (b)(4), and by not applying the sentence reduction contained in (b)(1). (§ 2255 Mot. 143–151). The Government responds that Petitioner waived this argument by entering into the Plea Agreement. (Resp. 22:6–22). Additionally, the Government maintains that the Court properly applied all sentencing enhancements. (*Id.* 22:18–23:6).

A petitioner's "right to challenge any sentencing errors may be explicitly waived." *Garcia-Vega v. USA*, No. 14-cv-00736, 2015 WL 4600740, at *3 (D. Ariz. July 30, 2015); *see United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991) (declining to consider defendant's claim that the district court had misapplied the Sentencing Guidelines because defendant had waived his right to appeal in his plea agreement and he was sentenced in accordance with the terms of that agreement). When a waiver specifically includes the waiver of the right to appeal a sentence, then it also waives the "right to argue ineffective assistance of counsel at sentencing." *United States v. Nunez*, 223 F.3d 956, 959 (9th Cir. 2000).

The Plea Agreement's provisions demonstrate that Petitioner waived the right to challenge the Court's calculation of the Sentencing Guideline range. This waiver is derived from two provisions. First, the Plea Agreement stated that Petitioner knowingly and expressly waived three rights:

> (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the Court; (b) the right to appeal the manner and in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c), the right to appeal any other aspect of his conviction or sentence and any order of restitution or forfeiture.

(Plea Agreement 18:14–20).

Second, as previously stated, the Plea Agreement provided that Petitioner "knowingly and expressly waives all collateral changes, including any claims under 28 U.S.C. § 2255, to [his] conviction, sentence, and the procedure by which the district court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel." (*Id.* 18:20–23).

Petitioner's Plea Agreement guaranteed him a sentence within a range, and he received the benefit of that bargain. *See United States v. Frazer*, 796 Fed. App'x 353, 354 (9th Cir. 2019). And Petitioner waived any argument regarding his sentencing calculation in his Plea Agreement. *See United States v. Medina-Carrasco*, 815 F.3d 457, 462 (9th Cir. 2016) (A "sentence in accordance with the plea agreement need not rest on a correct guidelines determination" where a defendant expressly waives the right to appeal the guideline determination) (internal quotation marks omitted); *United States v. Tran*, 30 Fed. App'x 715, 716 (9th Cir. Jan. 31, 2002) (determining the defendant waived his right to challenge the district's calculation of his sentencing guideline range where the plea agreement specified the defendant waived his right to appeal "the manner in which that sentence was determined of any of the grounds set forth in Section 3742, or an any ground whatever"); *Wells v. United States*, No. 09-cr-1137, 2010 WL 148685, at *2–*4 (W.D. Wash. Jan. 14, 2010) (finding the petitioner

waived his right to challenge the district court's sentencing calculation when his plea agreement contained appeal waiver provisions specifying he waived the right to appeal the sentence on any right conferred by § 3742 or any collateral attack except as it may relate to ineffective assistance of counsel); *Kinney v. United States*, No. 10-cr-00796, 2014 WL 2890113, at *11–$12 (D. Ariz. Feb. 7, 2014) (same).  Accordingly, the Court denies Petitioner relief to the extent he challenges this Court's sentencing calculation.

**F.  Defective Indictment**

Petitioner further alleges that the Indictment was defective because it omitted the "necessary mens rea component" of 18 U.S.C § 2252A(a)(2) and failed to include the applicable statute of limitations for the offense. (§ 2255 Mot. at 152–59).  In response, the Government maintains that the Indictment was not defective, but contends that even if it was, Petitioner waived the right to challenge the Indictment by pleading guilty. (Resp. 23:8–24:11).

"[D]efects in an indictment do not deprive a court of its power to adjudicate a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002).  Thus, any defects in the charging document cannot be raised after a guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The one exception to his rule is a defect that cannot be cured through a new indictment. *Class v. United States*, 139 S. Ct. 798, 801 (2018).

Even assuming the Indictment contained a defect, Petitioner's alleged defects could easily have been cured by a new charging document.  Moreover, Petitioner's counsel did not raise an objection to the Indictment at the time of the guilty plea.  Therefore, Petitioner's guilty plea waived any alleged defect in the Indictment. *See United States v. Carpio-Xochitla*, No. 19-mj-23092, 2020 WL 6158200, at *2 (S.D. Cal. Oct. 21, 2020).  Accordingly, the Court finds Petitioner's challenge to the validity of his Indictment is barred by his guilty plea.

///

///

### G. Ineffective Assistance of Counsel

Lastly, Petitioner contends he received ineffective assistance of counsel. Specifically, Petitioner identifies seventeen (17) bases of alleged error. (§ 2255 Mot. at 163–279). Petitioner requests an evidentiary hearing on these claims. (*Id.*).

To prevail on an ineffective assistance of counsel claim, Petitioner must show both deficient performance under an objective standard of reasonableness and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). To demonstrate prejudice, the petitioner must show that "but for counsel's unprofessional errors," there is a reasonable probability "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). A petitioner must allege facts—not conclusory allegations—to warrant relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

At the outset, of the seventeen (17) bases identified by Petitioner, the Court agrees with the Government that Petitioner's second (2), fourth (4), thirteenth (13), fourteenth (14), and fifteenth (15), arguments lack merit because they repeat unmeritorious arguments already addressed by the Court. (Resp. 24:14–19); *see, e.g., Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) ("[T]rial counsel cannot have been ineffective for failing to raise a meritless objection."); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance . . . ."). The Court further agrees with the Government that Petitioner's sixteenth (16) argument, which contends that his counsel performed deficiently by failing to object to the Justice of Victims of Trafficking Act fine, does

not constitute ineffective assistance because the Court has already vacated that fine. (Resp. 30:11–13). This leaves eleven (11) remaining arguments.

As to Petitioner's remaining arguments, the record before the Court is inadequately developed for the Court to make a merits determination. A § 2255 motion requires an evidentiary hearing when "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984) (quoting *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980)). Under this standard, an evidentiary hearing in § 2255 cases is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981); *see also United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) ("[A] district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'") (quoting *Schaflander*, 743 F.2d at 717); *see also Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982) ("a hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims").

Having considered the necessity of an evidentiary hearing, the Court will act with an abundance of caution and order a hearing to allow the record to be supplemented and to clarify the conflicting statements in Petitioners' filings only as to his remaining eleven ineffective assistance of counsel claims.[8] Further, when an evidentiary hearing is warranted in a § 2255

---

[8] Claims one, five, six, seven, ten, eleven, and seventeen all appear to be solely against Ms. Ojeda, Esq. These claims involve her alleged failure to investigate the facts of the case (claim one), failure to ask for a two-level downward departure (claim five), failure to assess and produce alibi witnesses (claim six), failure to advise Petitioner on the desirability of his plea, make certain objections to the PSR, inform Petitioner of his Criminal History Category, and advise the State Attorney to undo the request to withdraw a guilty plea (claim seven), failure to object to statements protected by the cooperation agreement (claim ten), failure to hire a forensic examiner to examine the computer (claim eleven), and failure to discover evidence that Petitioner was the one who received or downloaded the images (claim seventeen). (*See* § 2255 Mot. at 169–70, 183, 186–88, 189–97, 216–17, 218–27, 260–79). Claim three argues that Ms. Ojeda was ineffective for failing to object that the factual

proceeding, an indigent defendant is entitled to the appointment of counsel.  Therefore, the Court will appoint CJA counsel to represent Petitioner for purposes of his evidentiary hearing pursuant to Rule 8 and consistent with the provisions of the Criminal Justice Act, 18 U.S.C. § 3006(A).

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's § 2255 Motion, (ECF No. 184), is **DENIED in part** and **DEFERRED in part**.

**IT IS FURTHER ORDERD** that this case is referred to the CJA Program for appointment of counsel for the purposes defined herein.  The Clerk of Court is directed to forward this Order to the CJA Liaison.[9]

**IT IS FURTHER ORDERED** that both parties shall file a Joint Status Report no later than November 2, 2023, providing the Court three potential date for the evidentiary hearing.

**IT IS FURTHER ORDERED** that Petitioner's Motion of Response, (ECF No. 201), is **DENIED as moot**.

**DATED** this __9__ day of October, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court

---

basis of the plea was insufficient to support a guilty plea, and that Mr. Tanaka was ineffective for not appealing this failure. (*Id*. at 174).  Claim eight contends that both Mr. Abbatangelo and Ms. Ojeda were ineffective because they failed to suppress a laptop seized when Petitioner was arrested. (*Id.* at 207–10).  Claim nine alleges that Ms. Ojeda was ineffective for failing to object to the enhancements at sentencing, and Mr. Tanaka was ineffective for not appealing. (*Id.* at 214–15).  Lastly, Claim twelve argues that both Ms. Ojeda and Mr. Tanaka were ineffective for failing to file pre-trial motions. (*Id.* at 235–36).

[9] The Court has previously entered an Order waiving the attorney-client privilege between Defendant and his attorneys "Tony L. Abbatangelo, Heidi A. Ojeda, and G. Michael Tanaka only as it relates to his ineffective assistance of counsel claim in his Motion to Vacate." (Order Waiving Atty' Client Privilege 2:8–10, ECF No. 193).  To the extent further action is needed, Defendant's appointed counsel is advised to file a motion with the Court.